IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01417-GPG-NRN

TIMOTHY SPARKS,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and
THE PHOENIX INSURANCE COMPANY dba TRAVELERS INSURANCE,

    Defendants.

---

**ORDER ON
PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER TO PERMIT
AMENDED COMPLAINT TO INCLUDE BAD FAITH ALLEGATIONS AGAINST
DEFENDANT THE PHOENIX INSURANCE COMPANY FOR CONDUCT
OCCURRING DURING LITIGATION
(ECF No. 24)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on Plaintiff Timothy Sparks' ("Plaintiff" or "Mr. Sparks") Motion to Amend Scheduling Order to Permit Amended Complaint to Include Bad Faith Allegations Against Defendant the Phoenix Insurance Company for Conduct Occurring During Litigation ("Motion to Amend"). *See* ECF No. 24 (Motion to Amend) and ECF No. 24-1 (proposed Amended Complaint and Jury Demand). Defendant Phoenix Insurance Company ("Defendant" or "Phoenix") responded in opposition. ECF No. 27. Plaintiff filed a reply. ECF No. 29. The Court held a hearing on the issue of the amendment on April 29, 2025, and took the matter under advisement. ECF No. 34. Having considered the arguments of the Parties, the Motion to Amend is **GRANTED**

and the Amended Complaint and Jury Demand will be deemed filed as of the date of this Order.

## BACKGROUND

This is an insurance dispute arising from a June 18, 2019, rollover vehicle accident in which Plaintiff suffered injuries to his spine. At the time of the accident, Phoenix had issued a vehicle insurance policy to General Parts, LLC and General Parts Investment, LLC (collectively, "General Parts"). That policy included an underinsured motorist provision. Plaintiff, an employee of General Parts, was driving a vehicle owned by his employer and was operating the vehicle in the course and scope of his employment when the accident occurred. Plaintiff's medical treatment was pursued through and paid for via a workers' compensation claim, and he settled with the underlying tortfeasor's insurance carrier for its $25,000 policy limit.

Despite already receiving some compensation for his alleged injuries and damages via workers' compensation and the settlement with the tortfeasor, Plaintiff then sought underinsured motorist ("UIM") coverage from Phoenix under the policy issued to General Parts. From the start, Phoenix took the position that, as he was covered by workers' compensation through his employer, Plaintiff was not entitled to recovery of a UIM claim from his employer's UIM carrier because the Workers' Compensation Act provides the exclusive remedy under such circumstances. Thus, Phoenix made no offer and did not evaluate Plaintiff's claim or his injuries. Phoenix justified its position through reliance on a number of legal decisions by the state and federal courts of Colorado. *See, e.g., Ward v. Acuity*, 21-cv-00765-CMA-NYW, 2022 WL 824436 (D. Colo. Mar. 18,

2

2022), *rev'd* 2023 WL 4227502 (10th Cir. 2923) and *Ryser v. Shelter Mutual Ins. Co.*, 480 P.3d 1286 (Colo. 2021).

In *Ward,* Judge Christine M. Arguello, relying on the Colorado Supreme Court's *Ryser* decision, decided that an employee injured in an automobile accident caused by a third party while on the job was barred from receiving uninsured motorist benefits after he had received workers' compensation. In Judge Arguello's view, the Colorado Workers' Compensation Act provided the exclusive remedy for workplace injuries and permitting further recovery against the employer's uninsured motorist carrier would undermine the public policy behind the act. In so ruling, Judge Arguello decided differently from one of my other court colleagues, Judge Daniel D. Domenico who, two years previously in *Laurenti v. American Alternative Insurance Corp.*, 19-cv-01725-DDD-KLM, 2020 WL 9424250 (D. Colo., Jan. 3, 2020), had ruled that where an employee was injured on the job by a third-party tort-feasor, the employee ***would be entitled*** to recover underinsured motorist benefits from the employer's vehicle insurance carrier. 2020 WL 9424250, at *3.

The issue arose again in this Court in the case of *Klabon v. Travelers Property Casualty Co. of America*, 674 F. Supp. 3d 1031 (D. Colo. 2023), *certified question answered*, 556 P.3d 793 (Colo., Sept. 30, 2024). Confronted with opposing decisions by my two respected colleagues, I certified the question to the Colorado Supreme Court, which accepted the question and answered it on September 30, 2024. The Colorado Supreme Court held that an employee injured on the job by a third-party tortfeasor who received workers' compensation benefits ***is not barred*** from bringing suit to recover damages against their employer's UIM insurance carrier. *Klabon*, 556 P.3d at 805.

3

In the meantime, before the Colorado Supreme Court's decision in *Klabon*, the Tenth Circuit Court of Appeals (in a divided 2-1 opinion) reversed Judge Argeullo's decision in *Ward* and held, consistent with Judge Domenico's decision in *Laurenti*, that an employee covered by workers' compensation could make a claim against their employer's UIM carrier if he or she was injured by a third-party tortfeasor. *Ward v. Acuity*, No. 22-1117, 2023 WL 4117502, at *9 (10th Cir. June 22, 2023) (*Ward II"*). This was, nevertheless, merely a prediction by the Tenth Circuit as to what Colorado law would be on the subject, which was not decided for good until the Colorado Supreme Court's issued its *Klabon* decision on September 30, 2024.

### PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Plaintiff seeks leave to amend his complaint to add additional factual information about Phoenix's alleged continued bad faith conduct during the pendency of this action. Plaintiff's main argument seems to be that Phoenix's continued reliance on the reasoning found in Judge Arguello's *Ward* decision, even after it had been reversed by the Tenth Circuit in June 2023, and then its refusal to explain the basis for the claim denial after the Colorado's Supreme Court's *Klabon* decision, represented additional evidence of bad faith.

Plaintiff made a formal request for benefits on December 6, 2023, and included a copy of the Tenth Circuit decision in *Ward II*, but Phoenix denied the claim again, citing the certification of the legal question to the Colorado Supreme Court on May 26, 2023 in the *Klabon* case. The Colorado Supreme Court heard oral argument in *Klabon* on April 9, 2024. There were tough questions raised at oral argument by a justice of the Colorado Supreme Court, using words to the effect of "it could not have been more

4

clear" that the precedent on which the insurer was relying (*Ryser*) applied to a different situation from both *Klabon* and the circumstances of this case.

Plaintiff filed this lawsuit on April 17, 2024, after the oral argument in *Klabon.* His Complaint alleges, among other things, that Phoenix acted in bad faith in denying Plaintiff's claim. On September 16, 2024, Plaintiff's counsel wrote a letter to Phoenix's counsel asking the company to evaluate the claim, pointing out that the author of the *Ryser* opinion (which had formed part of the basis for Phoenix's denial) had stated during the *Klabon* oral argument that "I don't think we could have made it more clear" that *Ryser* was about a different situation that did not apply.

On October 8, 2024, one week after the Colorado Supreme Court issued its decision in *Klabon*, Plaintiff's counsel requested policy limits from Defendant Phoenix. On December 20, 2024, Plaintiff's counsel followed up to see if Phoenix had yet made an evaluation of Plaintiff's claim. On January 15, Plaintiff requested an explanation of Phoenix's offer so he could evaluate its reasonableness. Plaintiff also requested Phoenix's claim notes for a second time, which were not provided.

**DEFENDANT'S ARGUMENTS AGAINST AMENDMENT**

First, Phoenix argues that amendment should be denied because it was unduly delayed. Per Phoenix, Plaintiff has not shown that he acted with reasonable diligence in moving to amend or that the amendment could not have been accomplished within the time specified in the Scheduling Order.

Phoenix also argues that any amendment would be futile. Phoenix points to Plaintiff's allegations that "Phoenix's continued refusal to evaluate and pay the claim based upon the District Court order in *Ward* and the pending status of *Klabon*

5

constitutes bad faith and was unreasonable and unfair to Plaintiff." Phoenix argues that its actions taken in reasonable reliance on existing case law cannot constitute bad faith because such conduct is not unreasonable as a matter of law. *See Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572, 573–74 (Colo. App. 2003); *see also Anderson v. State Farm Mut. Auto. Ins. Co.*, 416 F.3d 1143, 1148 (10th Cir. 2005) (holding that prior representations of an insurer based on a previously understood state of law, even if mistaken, do not constitute bad faith).

Phoenix insists that because it reasonably relied on Judge Arguello's order in *Ward*, its conduct in denying the claim cannot be unreasonable, and certainly should not form the basis for additional allegations of bad faith in the proposed Amended Complaint. Phoenix further explains that the new allegations regarding bad faith conduct (other than for its denial based on existing case law) rest entirely on Phoenix's post-litigation conduct. In Phoenix's view, allegations of post-litigation conduct, on their own, are insufficient to sustain a bad faith claim. *See Johnston v. Standard Fire Ins. Co.*, 20-cv-02106-CMA-MEH, 2022 WL 1225311, at 4–5 (D. Colo. Apr. 25, 2022) (sustaining objection to magistrate judge's decision to allow discovery of post-litigation claim notes, finding such claim notes not to be relevant). Thus, in Phoenix's view, amendment to allow additional factual allegations about what it did post-litigation is futile.

Under Colorado law, an insurer's derivative duty to negotiate, settle, or pay an insured's claim is suspended when two elements are present: (1) an adversarial proceeding is filed, and (2) a genuine disagreement as to the amount of compensable damages exists. *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1113

6

(D. Colo. 2012). Phoenix relies on this so-called "suspension rule" to argue that nothing it might have done post-litigation can be used to support Plaintiff's bad faith claims.

## ANALYSIS AND DECISION

The deadline for joinder of parties and amendment of pleadings was September 30, 2024. Thus, allowing amendment of the complaint would mean modifying the Scheduling Order, which requires good cause. *See* Fed. R. Civ. P. 16(b)(4) (A scheduling order "may be modified only for good cause and with the judge's consent.") "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). This burden is satisfied, for example, when a party learns of new information in a deposition or that the governing law has changed. *Id.* Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order. *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). The party seeking an extension is normally expected to show at least good faith on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

If good cause to amend the Scheduling Order exists, the Court then turns to Rule 15(a)(2) which states, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Leave to amend shall be freely granted when justice so requires. *See, e.g., Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459 (D.Colo.1995). "If the underlying facts or circumstances relied upon

7

by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal . . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Dorough v. Am. Family Mut. Ins. Co.*, No. 15-cv-02388-MSK-KMT, 2016 WL 1426968, at *2 (D. Colo. Apr. 11, 2016).

Here, beyond arguing that Plaintiff's motion is untimely, Phoenix insists that any amendment would be futile because its duty to negotiate, settle, or pay Plaintiff's claim was suspended once Plaintiff filed this lawsuit. *See Rabin*, 863 F. Supp. 2d at 1113 (insurer's derivative duty to negotiate, settle, or pay an insured's claim is suspended under certain conditions). And most of the allegations included in the proposed Amended Complaint involve alleged conduct (or failures to act) by Phoenix *after* the filing of the lawsuit, when Phoenix insists its duty to negotiate was suspended.

Plaintiff, for his part, emphasizes that the "duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer." *Sanderson v. Am. Family Mut. Ins. co.*, 251 P.3d 1213, 1217 (Colo. App. 2010). And thus, per Plaintiff, the filing of this lawsuit did not eliminate Phoenix's duty to deal with him in good faith and, at bare minimum, adjust the claim and explain the basis for its claim evaluation. Plaintiff further

8

notes that this lawsuit was filed not because of a disagreement on the value of the claim but because Phoenix **refused to evaluate** the claim, in reliance on the District Court decision in *Ward*.

Under the unusual circumstances of this case, and purely in the context of the Motion to Amend, the Court agrees with Plaintiff and will grant leave to amend. First, I do not find that Plaintiff unduly delayed in seeking the amendment. There were communications with Phoenix after the *Klabon* decision came down asking Phoenix to adjust or evaluate the claim and provide additional information about its assessment. Plaintiff reasonably waited until it was clear that Phoenix either was not adjusting the claim or not providing an explanation for its evaluation before seeking leave to amend. This was not undue delay.

But more important, the circumstances of this case are unusual in that Phoenix apparently never actually evaluated the claim on the merits in the first instance, before the lawsuit was filed. Phoenix's denial of the claim was based exclusively on Judge Arguello's decision in *Ward*, and Phoenix's corresponding mistaken belief that a person in Plaintiff's situation was legally precluded from accessing his employer's UIM insurance. At minimum, there was a debate about the legal correctness of that position. One might argue that, given the uncertainty of its legal position, Phoenix should have adjusted the claim to be able to act quickly in the event the decision in *Ward* was reversed. And once the Tenth Circuit did issue its own opinion in *Ward II*, Phoenix could have acted promptly. Instead, Phoenix chose to wait until the Colorado Supreme Court's *Klabon* decision, which ultimately confirmed that Phoenix had guessed wrong

9

about its legal position. And at that point, Phoenix should have promptly adjusted and assessed the claim, consistent with its continuing duty of good faith to its ensured.

Phoenix takes the position that since a lawsuit had been filed, it was under no obligation to explain its evaluation to Plaintiff outside of the context of the lawsuit. The Court does not agree.

Under the rule laid out in *Rabin*, an insurer's duty derivative of its continuing duty of good faith, to negotiate, settle, or pay an insured's claim is only suspended when two elements are present: (1) an adversarial proceeding is filed, and (2) there is a genuine disagreement as to the amount of compensable damages. 863 F. Supp. 2d at 1113. While a lawsuit might have been pending, there was no demonstrable "genuine disagreement" as to the amount of compensable damages because Phoenix apparently never originally adjusted the claim, or, at the very least, Phoenix had not articulated the basis for the supposed "genuine disagreement" as to the amount of compensable damages. Once *Klabon* was decided—and arguably as soon as the Tenth Circuit had issued its decision in *Ward II*—Phoenix should have fulfilled its contractual duty to evaluate the claim and explain its position, notwithstanding the pendency of the lawsuit.

Of course, this will not be the final word on whether Plaintiff has articulated additional facts that constitute bad faith conduct during the pendency of the litigation, or whether, instead, Plaintiff's efforts in this regard are futile. But Judge David M. Ebel previously addressed the futility issue in the context of a motion to amend in the case of *General Steel Domestic Sales, LLC v. Steel Wise, LLC*, 2008 WL 2520423 (D. Colo. June 20, 2008). In the *General Steel* case, Judge Ebel stated, in pertinent part: "Defendants' futility argument seems to place the cart before the horse. Rather than

force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place." 2008 WL 2520423, at *4; *see also Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d. 726, 736 (D. Del. 2002) ("[T]his court hesitates to undergo a rigorous 12(b)(6) analysis of the claims alleged to be futile based on less than complete briefing, especially in light of the deferential standard under which the court must consider 12(b)(6) motions. The court believes the better course is to liberally allow amendments that state a colorable claim and defer judgment as to whether they survive a motion to dismiss for failure to state a claim until such time when that motion is raised."). For the same reasons expressed by Judge Ebel in *General Steel*, this Court finds at this stage that Plaintiff's Motion to Amend is not futile and should be granted.

## CONCLUSION

It is hereby **ORDERED** that Plaintiff's Motion to Amend, ECF No. 24, is **GRANTED**. The Amended Complaint, ECF No. 24-1, shall be filed on the docket as the operative pleading and is deemed filed as of the date of this Order.

Dated:    May 15, 2025
          Denver, Colorado                    N. Reid. Neureiter
                                              United States Magistrate Judge

11